PER CURIAM.
August 1, 1960, by direction of the Board of Governors, The Florida Bar filed a complaint against Robert M. McClosky, a member of The Florida Bar practicing law at Miami Beach, Dade County. The gist of said complaint was that during the years 1958 and 1959 respondent Robert M. McClo-sky was guilty of unprofessional conduct, to-wit:
“a) That the said respondent did on a date in December, 1958, (said exact date being unknown to Com- ■ plainant) agree in writing to be bound by the terms, conditions and provisions of a certain Agreement between Leon W. Graham and Victor E. Graham, parties of the first part, and George V/inston and Ruth Winston, parties of the second part, prepared by respondent wherein said respondent was named, appointed and designated as Escrow Agent for the purpose of receiving, holding in escrow and disbursing in' accordance with the terms of said Agreement the total sum of Thirty-five Thousand and no/100 Dollars ($35,-000.00). That said respondent did thereafter receive said funds as escrow agent, and did subsequently wilfully, knowingly and wrongfully disburse and pay out the total sum of $35,000.00 of and from said escrow funds contrary to and in violation of the terms, conditions and provisions of said Agreement. That said wrongful disbursements were made by respondent as follows:
“On February 17, 1959, the sum of $5,000.00;
“On February 17, 1959, the sum of $20,000.00;
“On March 3, 1959, the sum of $10,-000.00.
“b) That the said respondent did on or about the following dates, to-wit: February 17, 1959, and March 3, 1959, wilfully and wrongfully disburse certain funds held by him in escrow.
“c) That the said respondent did, on a date unknown to Complainant but which date was between December 11, 1958, and March 3, 1959, wrongfully co-mingle certain funds held in escrow by respondent.
“d) That the said respondent did, on a date or dates unknown to Complainant but which said date or dates were between December 11, 1958, and March 3, 1959, convert to his own use and benefit certain funds held in escrow by him.
“4. By reason thereof the said Robert M. McClosky has violated Canons Number 1, 27 and 30, of Rule B, Section II, Rules Governing the Conduct of Attorneys in Florida.
“Wherefore, the complainant prays that the respondent may be appropriately disciplined in accordance with said Article XI of the Integration Rule of The Florida Bar.”
A referee was appointed to take testimony in support of said charges which was submitted by The Florida Bar and the respondent and has been made a part of the record herein. On the basis of the evidence so taken, the referee found respondent guilty of the charges laid against him; that in so doing he was guilty of violating Canons 1 and 30 of Rule B, Section II, Rules Governing the Conduct of Attorneys in Florida, 31 F.S.A., in that he did improperly and without authority disburse moneys which had been entrusted to him as escrow agent.
Respondent explained that Colonial Plaza Building Corp. which received $15,000 of the escrow funds, was “George Winston’s nominee corporation” and that Business *598 Finders, Incorporated, which received $20,-000 of the escrow funds, “was a corporation owned and operated by one Mac Elrod, who was George Winston’s partner in the building corporation.”
The purpose for which the escrow funds were to be used was to construct a bowling alley and they were not to be paid out till the bowling alley was completed. Respondent admitted that the parties above named who were to construct the bowling alley came to him and overpersuaded him to deliver the escrow money to them that they were going to use to construct the building. He, respondent, said, “I foolishly gave it to them. They never built the building, and Mr. Elrod departed the country with the money, and I am here on the carpet.” All of this respondent admitted was done in violation of the terms of the escrow agreement.
The referee entered judgment requiring the respondent to reimburse the funds entrusted to him in reasonable installments “commensurate with his ability to pay without subjecting respondent to economic strangulation,” and that the right of respondent to practice law be suspended for any period of time during which he shall be in default of any installment payment decreed.
On review of the judgment and recommendation of the referee by the Board of Governors of The Florida Bar, the findings of fact of the referee were approved but the referee’s recommendation as to disciplinary action was not approved. In its stead the Board of Governors ordered that respondent be suspended from the practice of law for a period of six months, said suspension to’ commence from the date this judgment becomes final and that he further pay all costs of this proceeding in the sum of $242.44.
We are now confronted with a petition on the part of the respondent to' review and modify the judgment of the Board of Governors, the substance of which motion is (1) that respondent has done his best to make the complaining witness in the cause whole as is more clearly set forth in respondent’s Exhibit 6 which is a summons and nine page complaint dated May 11, 1960 wherein and whereby the complaining witnesses and others have brought suit against Sports Arenas (Delaware) Inc. for $750,-000. The purpose of this suit was to recover the $35,000 placed in escrow with respondent by the contract between Leon W. Graham and Victor E. Graham, parties of the first part, and George Winston and and Ruth Winston, parties of the second part, including other funds involved in contracts with Sports Arenas (Delaware) Inc. Recovery of part or all this amount would more than compensate and make whole the complaining witnesses; (2) it is revealed by the findings of fact of the referee that respondent did not directly or indirectly financially gain from the wrong he has been accused and convicted of. The cases in this court show that such a penalty as has been imposed on respondent was only done when the attorney involved gained financially from his own wrongdoing. No such showing is made here. (3) Since respondent’s only way of livelihood is in the law practice, suspension of six months from that “can only work to cause financial strangulation to Respondent, and it is based upon this thought that Respondent submits to this Court that for the wrong for which Respondent has been found guilty, the six months suspension imposed is unjustified.” Respondent requests that this court review the judgment entered by the Board of Governors and modify it to a suspension for lesser time, or to a public or private reprimand as the court may seem proper.
If a lawyer’s unprofessional conduct could be measured solely by its effect on himself, there might be substance to respondent’s plea but here respondent undertook the execution of a trust on behalf of the complaining witness or witnesses, the violation of that trust resulted in a clear monetary loss of $35,000 to his trustee. He says that his friend Elrod persuaded him *599 to do this hut that is no excuse, it is equivalent to pleading the baby act. A lawyer’s professional character and integrity is measured very largely by the manner in which he withstands the blandishments and temptations of the “Elrods.” In the abuse •of a trust like that involved here the damage a lawyer does to his profession in the eye of the public is immeasurable. Litigants to whom he is obligated are embarrassed and inconvenienced. In fact, such professional transgressions affect so many factors, it is impossible to measure their outreach in damages either to the public or those personally affected.
We think the Board of Governors was more than lenient to respondent. Its judgment is accordingly approved.
THOMAS, C. J., and TERRELL, HOB-SON and ROBERTS, JJ., concur.
DREW, J., agrees to judgment.